### BLEEKER and wife *vs.* BINGHAM and wife.

Where the bill charged, that by a post nuptial agreement between the defendants, a husband and his wife, the property of the wife was conveyed to trustees, and it was agreed that a certain specified part of the property should be vested in stocks, or put out at interest, as a provision for the complainant for whom the wife considered herself under a moral obligation to provide, and that the interest or the dividends on the stock should be paid to the wife, free from the control of her husband, for the use and benefit of the complainant, according to the discretion of the wife during her life, and that upon the death of the wife, the principal should become the property of the complainant if she survived her; and the bill further charged that the husband refused to permit his wife to receive the dividends on the stock, and to pay them over, according to her discretion, to the complainant; a general demurrer to the bill for want of equity, put in by the husband for himself and his wife jointly, was overruled.

Although upon a deed *inter partes*, a stranger cannot at law recover on a covenant contained therein for his benefit, yet a court of equity will give effect to stipulations of this kind in marriage articles, and other conveyances in trust, upon the application of the party for whose benefit the provision was intended.

A demurrer for want of equity cannot be sustained, unless the court is satisfied that no discovery or proof properly called for by or founded upon the allegations in the bill, can make the subject matter of the suit a proper case for equitable cognizance.

April 17.   THE bill in this cause alleged that Ephraim Brasher died some years since, and by his will bequeathed the whole of his estate to his widow, now the wife of J. Bingham, the defendant. That Brasher had no children; but that Grace Berrian, who was his relative, now the wife of L. Bleeker the complainant, resided in his family. That it was the intention of Brasher to alter his will, and to give G. Berrian a portion of his estate; but being suddenly overtaken by death, he had not time to alter his will for that purpose. That in his last moments he requested his wife to provide for her. That the widow after-

wards undertook to make such provision, and for this purpose she made a will, by which she gave to G. Berrian a legacy of $1250, and made her the residuary devisee of property worth at that time $8000. That the widow afterwards married John Bingham, without making any other provision for G. Berrian ; acting under the belief that the will would remain valid notwithstanding the marriage. That when Mrs. Bingham discovered that her will was revoked by the marriage, she applied to her husband to join her in executing a trust deed, disposing of her property after her death, according to the terms of the will. That afterwards, in February, 1818, the defendant and his wife executed a trust deed to Stephen Allen and Judah Hammond. That by this deed, which recited that Mrs. Bingham was seised of certain lands in fee at the time of her marriage, part of which had been taken by the corporation of the city of New-York, for which damages to the amount of $13,100 had been awarded, and that Bingham was then seised of the residue of such lands, in right of his wife, and that he was willing and desirous to enable his wife to make such disposition of the property as if she was sole, he conveyed the premises mentioned in the deed, to Allen and Hammond as trustees, upon the trusts and for the uses stated in the deed. And that he covenanted with the trustees to permit her to dispose of the said lands, and her other separate estate, as if a feme sole ; reserving to himself the use of $10,000 of the amount awarded as damages, for his natural life. The trust deed then contained a clause, under which the complainants claimed, in the following words : "And as to the said sum of $13,100, it is further agreed by and between the parties aforesaid, that the sum of $2,500, being part and parcel thereof, shall be put out at interest or invested in bank stock, at the option of the said Mary, (Mrs. Bingham,) and that the interest thereof or the dividends which shall or may accrue or arise therefrom, shall be paid to the said Mary, and received by her, on her own receipt, for the use and benefit of Miss Grace Berrian, according to the discretion of the said Mary, free from any control of the said John Bingham, during the natural life of her the said Mary, and so as and in such manner that the said sum of $2500 shall be and remain, and shall be considered

and taken to be separate and distinct from the estate of the said John Bingham, and no ways accountable for his debts, in manner aforesaid. And from and immediately after the decease of the said Mary, the said sum of $2500 shall become and be the proper money of Miss Grace Berrian, aforesaid, for her own use and benefit, forever; provided the said Grace shall survive the said Mary. And that no alteration or other limitation or appointment shall be made by the parties of the first part to these presents, or either of them, whereby to defeat or impair the estate granted by this clause to the said Grace Berrian, any thing in these presents contained to the contrary thereof notwithstanding. But subject, nevertheless, to the following proviso, that is to say : in case the said Grace Berrian should happen to die before the time of the decease of the said Mary, then, and in that case, if the said Grace Berrian should leave no lawful issue, the said Mary reserves to herself the right of making such further disposition of the said sum of $2500 as to her shall seem meet."

The bill also stated the written acceptance of the trust by Allen and Hammond, and the recording of the trust deed, in March, 1818. That in April or May thereafter, the defendants, pursuant to the provisions of the trust deed, and for the use and benefit of Grace Berrian, purchased 85 shares of the stock of the Mechanics' Bank, at the price of $2491, for the purpose of investing the $2500 ; which investment was declared by the defendants, at the time, to be made for her use and benefit, in compliance with the trust created for her by the trust deed. That the stock was bought in the name of Mary Bingham, and her husband had always received the dividends thereon. That the complainants were married in July, 1818, but not having seen the trust deed, they were not informed until lately that by that deed Mrs. Bleeker was entitled to the dividends on the stock, during the life of Mrs. Bingham. That the complainants had applied to Bingham for the payment of the dividends, but such payment had been refused. That they were not informed whether Bingham had paid the same over to his wife according to the trust. But that he had refused to permit his wife to pay over the dividends to the complainants ; and that she, acting under

fear and compulsion of her husband, had refused to pay over the same. The bill prayed a discovery, as to the investing of the $2500, agreeable to the trust; as to the receipt of the dividends; as to who had received them, and how they had been disposed of. It also prayed that the defendants might be decreed to pay the dividends to the complainants; that the $2500 might be securely and properly invested, under the direction of the court; and for general relief.

The defendants put in a general demurrer to the bill, for want of equity.

*J. Smith,* for the complainants.

*S. A. Talcott,* for the defendants.

THE CHANCELLOR. The cases referred to by the counsel for the defendants, on the argument, establish the principle, that upon a deed *inter partes,* a stranger cannot at law avail himself of a stipulation in his favor. Neither can the release of such stranger be pleaded in bar to an action of debt or covenant brought by the party with whom the agreement was made. (*Scudamore* v. *Vandenstene,* 2 *Coke's Inst.* 673. *Gilby* v. *Copley,* 3 *Lev.* 138. *Storer* v. *Gordon,* 3 *Maule & Sel.* 308. *Barford* v. *Stuckey,* 5 *Moore's Rep.* 23.) It will be found upon examination, however, that this is a mere technical rule. And in *Barford* v. *Stuckey,* Dallas, Ch. J. says, in express terms, that the person with whom the contract was made might have been compelled by a court of equity to sue for the benefit of the party in whose favor the stipulation was made. It is every day's practice in this court to give effect to such stipulations in marriage settlements, and other conveyances in trust, upon the application of the persons in whose favor the stipulation is made; although such persons are not parties to the deed. And even at law, upon an agreement not under seal, a third person may maintain the equitable action of assumpsit upon a stipulation for his benefit, contained in a contract between other parties. (*Schermerhorn* v. *Vanderheyden,* 1 *John. Rep.* 139. *Sprat* v. *Agar,* 2 *Siderf.* 115. *Dutton* v. *Pool, T. Raym. Rep.* 302. *Starkey* v. *Mill, Style's Rep.* 296.)

In this case Grace Berrian can hardly be considered as a mere stranger to the deed of trust, and to the consideration upon which the provision in her favor was made. Although Mrs. Bingham was under no legal obligation to make this provision, or any other, in favor of Grace, yet she undoubtedly considered the dying request of the first husband, from whom she received the property, as forming a moral obligation, as strong, at least, as that which requires a parent to provide for his children. I think, therefore, there was a meritorious consideration in the case to support this agreement with Mrs. Bingham, by her husband, in behalf of the object of her bounty. There is no pretence in this case, that the consideration received by the husband from the wife was not sufficient to support the agreement as between themselves. The whole property belonged to the wife; and there were no children of the marriage, to entitle him to an estate for life as tenant by the curtesy; yet, by the deed of trust, he obtained an interest for life in $10,000 of the money arising from her land which had been taken for a city improvement.

It is not necessary to determine, in this stage of the suit, whether there can be any decree against the wife, in relation to the income of the bank stock; or whether that income would belong to Mrs. Bleeker, on the death of Mrs. Bingham, if the latter, in her discretion, should think proper to retain it until that time. The allegation in the bill is that the husband, in violation of the stipulation in the trust deed, has received the dividends himself, and has refused to permit his wife to pay them over to the complainants. In other words, that he has controlled her volition; and has not permitted her to apply the dividends, to the use of Mrs. Bleeker, according to her own discretion. If the agreement is valid, the court may at least require the husband to place the dividends in the hands of the wife, so that she may apply them to the use of the complainants in such way as in her discretion she may deem proper. And if she thinks proper to have them paid over absolutely, the husband should be required to pay them accordingly.

If the complainants have an interest which this court can protect, it was not necessary for them to join the wife, as a complainant, in the bill against her husband. Her legal and

equitable rights can be enforced and protected as a defendant. And if she wishes to put in a separate answer for that purpose, it will be a matter of course, in a case like the present, to grant her that permission. There is no objection made by the demurrer, of a want of parties; and if the trustees are necessary parties, the complainants can bring them before the court, as defendants, by an amendment of the bill. This is a general demurrer for want of equity; and it must be overruled, unless the court is satisfied that no discovery or proof, properly called for by, or founded upon, the allegations in the bill, can make it a proper subject of equitable jurisdiction. (1 *John. Cas.* 427.)

For these reasons I think the complainants are entitled to an answer. The demurrer must therefore be overruled, with costs.